NELSON P. COHEN
United States Attorney

KAREN L. LOEFFLER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
(907) 271-5071
Fax (907)271-1500
Karen.Loeffler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case Nos. 3:06-cr-00070-08-HRH |
| ) | and 3:06-cr-0104-HRH |
| Plaintiff, ) | |
| ) | |
| vs. ) | GOVERNMENT'S SENTENCING |
| ) | MEMORANDUM AS TO |
| KOUROSH PARTOW, ) | DEFENDANT KOUROSH |
| ) | PARTOW |
| Defendant. ) | |
| ) | |
| ) | |

COMES NOW the United States of America, by and through counsel, and submits its sentencing memorandum and prehearing brief as to defendant Kourosh Partow as follows:

I.   Factual Background

Defendant Kourosh Partow is facing sentencing on two indictments charging him with loan fraud in his capacity as a loan officer first for Countrywide Home Loans and later for American Home Mortgage.

   A.   Partow's background

From at least May of 1999 until December of 2001, Partow was a loan originator licensed in the State of Wisconsin.  By order dated March 5, 2002, Partow's license was revoked by the State of Wisconsin for various acts including forging the name of a landlord on a rent verification form.  See Exh. 1, Order of revocation State of Wisconsin, Division of Banking.  Partow moved to Alaska in or about October of 2001 and began working for Countrywide Home Loans, as a branch manager and loan officer in the Anchorage office of Countrywide Home Loans. As a loan officer it was his job to meet with borrowers, take their information and arrange for financing for residential real estate purchases.  Partow was paid, in part,  based on commissions at loan closings.

   B.   Background to the Indictment

Beginning sometime in 2002, Azem Limani obtained a number of loans at First National Bank of Alaska ("FNBA").  The loans were for the purchase of residential real estate, and Limani's plan was to fix up the properties and sell them

to repay the loans. Limani obtained the loans using false and fraudulent tax returns overstating his income and ability to repay the loans. At some point in his relationship with FNBA, Limani either was told or realized that he needed to move loans to another institution as he had too much debt with FNBA and no way to pay it back. Limani was introduced to Kourosh Partow by the loan officer at FNBA and the scheme detailed in the indictment ensued.

    C.    The Countrywide Indictment and Partow's Role

By 2002, Limani was in deep financial trouble, owing a series of loans that he could not pay. He had deep credit problems and could not obtain financing in his own name. With the help of Kourosh Partow, Limani then arranged to use various associates, friends and others to obtain a series of nominee or straw loans from Countrywide. (Limani also obtained some loans from other institutions. Those loans did not involve Partow and will not be discussed here). The reason for the loans was to provide cash to Limani so that he could pay off loans or other debts and keep his business interests afloat by moving money around. As detailed below, to aid this scheme, Limani would bring individuals to Partow for the purported purpose of buying owner occupied single family homes. The alleged borrowers would be buyers and borrowers in name only. In fact, they would simply put their names on the paperwork, either for money or as an

accommodation to Limani. The borrowers were each taken to Partow by Limani, in each instance the borrowers state that they had very little discussion with Partow. In each instance, Partow simply falsified the borrowers income and often bank accounts so as to make it appear that the borrower easily qualified for the loan program offered by Countrywide with no further internal checks necessary. Partow was fully aware that in many instances the borrower was not purchasing the property and was simply acting as a nominee for Limani.

In May of 2006, after learning of the FBI's investigation of the some of Partow's loans, Countrywide sent a team to audit the practices at the Anchorage branch. Upon Countrywide's internal review finding falsified loan documents and other irregularities, Partow was fired by Countrywide in June of 2006. He then went to work for American Home Mortgage where he continued to engage in the practice of falsifying borrowers income on loan applications until he was fired by American Home Mortgage in October 2006, after a search warrant for his files was executed at the Anchorage office where Partow worked.

    1.    The Specific Loans

The Superseding Indictment in case 3:06-cr-0070 charged Partow with engaging in the financial fraud scheme in counts 7, 8, 10 and 12-15 - 7 loans involving 6 different pieces of property.

Count 8 - 2683 Wesleyan Drive.  In January 2004, Limani asked Jan Marquiss to put his name on loan papers for a purported purchase of property at 2683 Wesleyan Drive.  Marquiss acted as a nominee for Limani.  He had no intent of purchasing the property as a primary residence.  Partow falsified Marquiss' income on the loan application - grossly overstating both Marquiss' income and the amount of money Marquiss had in bank accounts.  Indeed, Marquiss had other loans at the time.  Those however stated his true income which was well below that made up by Partow.

Count 9 - 12387 Division Street. Robin Dorman was a girlfriend of Azem Limani's.  On a number of occassions, Limani told Dorman that he would give her a house.  Limani first told her that the property at 12387 was to be hers.  Later, he decided that he needed cash so he asked his brother Dzevid Limani to put his name on loan papers as a purchaser from Dorman.  The proceeds of the purchase would then go, in part, to Limani to aid his cash flow problem.  Partow, again helped the proceedings by falsifying Dzevid Limani's income and bank account balances.  Limani signed for Dorman as the seller and made all the subsequent mortgage payments.

Count 10 - 12371 Division Street.  In May 2004, Limani approached Bekim Hasipi and asked him to put his name on loan papers for a nominee purchase of

property in order to help Limani out because he needed money. Limani took Hasipi to Partow. Limani and Partow then discussed Limani's financial problems and his need for cash. They further discussed loan terms between them. Hasipi had no input into the loan. As with the others, Partow falsified Hasipi's income. He never asked Hasipi for his real income or assets. Although the loan papers stated that Hasipi was buying the property as a primary residence from Jan Marquiss, in reality he simply obtained a loan in order to provide proceeds to Limani who obtained the sale proceeds from Marquiss as part of their earlier deal.

Count 12 - 10541 Rezanof Circle. In October, 2004, Limani approached Agim Delolli a contractor that worked for him doing renovations of residential property. Limani asked Delolli to put his name on loan papers for a house at 10541 Rezanof Circle. Limani told him that his credit was bad so Delolli would have to put his name on the papers, but they would fix up the house and then sell it quickly and split the proceeds.

Limani took Delolli to Partow's office to get the loan. As with all the other cases, Delolli met briefly with Partow who never asked him anything about his income or assets. Partow again falsified Delolli's income and bank accounts. Delolli never intended to occupy the residence as his primary residence. Throughout this conspiracy, Delolli always lived at a residence at Cantonment in

Anchorage, which he financed at Residential Mortgage. Those loan papers, as well as other loan papers obtained by Delolli not done by Partow all contain his true income which is less than that made up by Partow by almost a factor of eight. When Limani later arranged for Delolli to sell the house again to Jan Marquiss, Limani took the majority of the subsequent loan proceeds from the sale.

Count 13 - 10541 Rezanof - the Sale from Delolli to Marquiss.

After Delolli began to realize that Limani had financial difficulties and was unlikely to pay him for the work he was doing on the residence, Delolli told Limani to get his name off the loan. Limani then approached Jan Marquiss and offered to pay him to put his name on loan papers for the nominee purchase of 10541 Rezanof. The process on this loan was identical to the others detailed above. Partow greatly overstated Marquiss' income. Marquiss never intended to live in the residence, which Partow well knew as he was actively working with Limani to deal with Limani's cash flow problems.

Count 14 - 11200 Briggs Court - Limani's Residence. Limani had lived at 11200 Briggs Court for years. As his attempt to move money around and pay enough bills to avoid mass foreclosure's continued, Limani approached another acquaintance, Paul Brannon and asked him to "buy" his house so that Limani could get some money. As with the others Brannon was never going to move in to

Limani's house and Limani had no intention of moving out. Limani sent Brannon to Partow who falsified Brannon's income to get Limani the money.

Count 15 - 4149 Timberland Loop - Afrim Alimi

In May 2006, Limani approached another friend Afrim Alimi and requested that he put his name on a loan as a favor. Again, Limani sent Alimi to Partow who faked Alimi's income on the loan papers. Partow, in this case, stated that a down payment had been made by "Dzevid Alimi" - a fictious person bearing the first name of Azem's brother and Alimi's last name and representing a fictitious down payment.

In sum, in Partow's dealings with Limani, he engaged in a continuous pattern of making false and fraudulent loan applications to aid Limani in moving money around to hide his ownership of properties and massive debts. Partow's benefit was to obtain quick loan closings, bringing him large commissions based on fraudulent loans.

In May of 2006, Countrywide conducted an audit of the Anchorage branch loan procedures under Partow and fired him.

D. The American Home Mortgage Indictment

After Partow left Countrywide, the FBI continued to investigate him to determine if he was engaging in the same type of fraudulent actions at American

Home Mortgage. In October 2006, the FBI executed a search warrant at American Home Mortgage and Partow was then charged in a second indictment with engaging in a similar pattern of falsifying income figures on residential home loans.

Counts 1-9 of the American Home Loan case detail a number of loans in which Partow again made up income and asset figures to qualify individuals for loans. Two incidents from the American Home Loan Indictment stand out in terms of explaining Partow's conduct.

In September 2006, Christine Willis attempted to get a loan from American Home Mortgage. She worked for a bank in Ketchikan but was unable to get a loan from her bank due to her husband's credit problems. She was referred to Partow. Ms. Willis filled out a loan application in her own handwriting and faxed it to Partow. The final loan application written by Partow, again, contained different numbers by adding her husband's income to her income. During the search warrant the FBI found the original application filled out by Ms. Willis which detailed her true income as opposed to the false numbers put in by Partow.

In July 2006, right after he was fired by Countrywide, a couple, approached Partow to purchase a property at 6673 Shangri-La Circle in Anchorage. Partow originally arranged a stated income loan. However, when Ms. Applebury

questioned the fees, he told the couple that they would have to do a full documentation loan in order to get lower fees. Since the couple qualified for the loan anyway they did the full documentation loan. In the search warrant, the FBI obtained the loan application created by Partow when he was setting up a stated income loan. As with all the other loans, the figures substantially overstated the couple's income. The full documentation papers, of course state their true income.

E. Partow's Post-Charging Conduct.

After he was indicted a summons was originally issued for Partow's appearance. The government later sought an arrest warrant when in learned that Partow, had taken all of the equity out of his house right after the American Home Mortgage seach warrant and then spirited the money, some $745,000 over seas. Partow then fled the country. He traveled to France and then to Iran where he obtained a new Iranian passport. (Partow has dual citizenship.) He failed to show up for his arraignment and was only agreed to come home after his wife showed up in Alaska seeking to clean out what was left of their bank accounts and was arrested.

II. The PSR

The government did not interpose any objections to the PSR. However, based on the defendant's objections the government does not now agree that

defendant Partow qualifies for acceptance of responsibility. As detailed belwo the government has hired an appraiser that puts the total loss on two properties involved in the indictment at just under $200,000. Thus, the government believes that Mr. Partow's total offense level is 19 with a sentencing range of 30 -37 months.

    A.    Guideline Issues to Be Resolved at Sentencing

        1. Amount of Loss.

The government hired an appraiser to appraise the properties located at 11200 Briggs Court and 10541 Rezanof Circle. Application Note 3E to § 2B1.1 explains that in a case, such as this, involving collateral, loss is to be reduced by the loan amount minus the fair market value at the time of sentencing. The government will call appraiser Steven Turner to testify as to his appraisals of 10541 Rezanof Circle and 11200 Briggs Court.

   Rezanof Circle is owned by Jan Marquiss. Marquiss obtained two loans through Partow from Countrywide for this nominee purchase. The laons were for $520,000 and $65,000 for a total of $585,000. Originally Limani was making the loan payments as this was a nominee loan. Even before he was arrested Limani stopped making the payments. Marquiss is also not able to make the loan payments. Mr. Turner's appraisal sets the current market value at $515,000 for a

**loss of approximately $70,000.**

11200 Briggs Court was turned over to the bank by Paul Brannon. A foreclosure sale was held at which there were no bids made. The loans obtained through Partow were for a total of $495,000. Mr. Turner appraises the current fair market value of the property at $375,000 for a **loss of approximately $120,000.** Thus, the combined loss for both properties is approximately $**190,000**.

The government has provided the appraisal to the defense and is working with defendant to provide access to both properties. The government will call Mr. Turner at the evidentiary hearing assuming defendant still contests the loss amount.

2.	Acceptance of Responsibility

It appears from defendant's objections to the PSR that he has taken the position that none of loans listed in the two indictment are relevant conduct and that he did not falsify income amounts on any loans except those to which he plead guilty. The government does not intend to call every borrower in each case, but will call a number of borrowers, Agim Delolli, Jan Marquiss, Bekim Hasipi, Robin Dorman, Darrell Appleby and possibly agent Mike Thoreson and Azem Limani to establish the pattern of falsifying income detailed in the indictment. In addition the government intends to call a representative of Countrywide Home Loans to establish that the company does not countenance falsifying income in this matter

and, in fact, closed down their branch office in Anchorage causing considerable losses, in order to clean house after discovering Partow's fraud.

The government was also planning on calling a representative of American Home Loans. However, due to that company's recent bankruptcy the government is not sure if the potential witness is still employed with the company.

3. Other Issues

Application note 5 to Guideline Section 3C1.1 points out that the obstruction of justice enhancement does not apply when a defendant flees to avoid arrest. However, it notes that a finding of flight to avoid prosecution or arrest may be warrant a greater sentence within the guideline range and/or may affect acceptance of responsibility. The government intends to call Special Agent Michael Thoreson to establish Mr. Partow's action is selling all assets and fleeing the country to avoid prosecution. This testimony will be the same as that presented to the Magistrate Judge at the detention hearing in which Magistrate Judge Robert found a severe risk of flight and held Mr. Partow without bail for trial.

In lieu of attaching the exhibits for the evidentiary hearing to this memorandum, the government intends to file an exhibit list with pre-marked exhibits prior to the hearing.

III. Conclusion

Finally, Mr. Partow's history appears to be one of complete disregard for honesty in his profession. After losing his license in Wisconsin for forging documents, he came to Alaska and began falsifying documents. After losing his job with Countrywide he continued the practice at another mortgage company. Upon learning of the investigation he fled the country. He stands before the court taking minimal responsibility for his actions. The court should affirm the need for deterrence; the need to protect the public and any company for which he works and societal norms by imposing a significant sentence at the upper end of the applicable guideline range of 30 - 37 months.

RESPECTFULLY SUBMITTED August 21, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Karen Loeffler
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: 907-271-1500
email: karen.loeffler@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on August 17, 2007
a copy of the foregoing was served electronically on:
Kevin T. Fitzgerald

s/ Karen Loeffler

U.S. v. Partow 3:06-cr-0070- 8 (HRH); 3:06-cr-00104 (HRH)